RECEIPT # 56924
AMOUNT $ 150
SUMMONS ISSUED ✓
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 6-28-04

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2004 JUN 28  A 11: 44
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CONCEPTS ETI, INC. d/b/a CONCEPTS NREC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Docket No. |
| ANTHONY F. KAVANAUGH, JR. d/b/a DCA ENGINEERING, | ) ) **04-11465 RGS** ) |
| Defendants. | ) MAGISTRATE JUDGE Alexander |

## VERIFIED COMPLAINT

Plaintiff Concepts ETI, Inc. d/b/a Concepts NREC (hereinafter "Concepts"), through its attorneys Downs Rachlin Martin PLLC, alleges as follows:

### NATURE OF ACTION

This action arises out of the Defendant's unauthorized use of Concepts' proprietary and confidential information to secretly compete against Concepts while Defendant was employed by Concepts. Defendant Anthony F. Kavanaugh, Jr. d/b/a DCA Engineering (hereinafter "Kavanaugh") was employed by Concepts until May 27, 2004. Unbeknownst to Concepts, on or about May 15, 2004, Kavanaugh sent correspondence to one of Concepts' long-standing customers (the U.S. Army). In this correspondence, Kavanaugh divulged the fact that Concepts was contemplating a price increase in the services it rendered to the Army. Kavanaugh offered to provide the same services to the Army, for a lower price, through a business entity apparently operated by Kavanaugh, DCA Engineering. Kavanaugh engaged in this disloyal and illegal conduct while still employed by Concepts. Concepts was unaware that Kavanaugh was attempting to undercut its long-standing contractual relationship with the Army in this manner,

DOWNS
RACHLIN
MARTIN PLLC

and never authorized Kavanaugh to disclose its proprietary and confidential pricing information to the Army. Concepts eliminated Kavanaugh's position on May 27, 2004, and, accordingly, advised Kavanaugh that he was terminated as of that date. At the time of Kavanaugh's termination, Concepts was unaware of Kavanaugh's May 15, 2004, correspondence to the Army and was unaware that Kavanaugh was secretly competing with Concepts. Subsequent to May 27, 2004, the Army advised Concepts of the existence and contents of the May 15, 2004, letter from Kavanaugh.

As a result of Kavanaugh's egregious actions while still employed by Concepts, Concepts' longstanding relationship with the Army has suffered, and the Army has preliminarily indicated that it will entertain a competing bid from Kavanaugh and DCA Engineering. Concepts brings this action for money damages for Kavanaugh's blatant breach of contract, tortious interference with existing business relations, breach of the duty of loyalty, misappropriation of trade secrets, and violation of Mass. Gen. Law Ch.. 93A, § 11. Concepts seeks recovery of money damages, treble damages, attorneys fees, and injunctive relief prohibiting Kavanaugh from using Concepts' confidential and proprietary information to compete against Concepts in the future.

## PARTIES

1. Plaintiff Concepts is a Vermont corporation having its principal place of business at 217 Billings Farm Road, White River Junction, Vermont, 05001.

2. Upon information and belief, Defendant Anthony F. Kavanaugh, Jr. is an individual residing in Uxbridge, Massachusetts.

3. Upon information and belief, Defendant Kavanaugh commenced doing business under the trade name DCA Engineering sometime before May 15, 2004.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), as the Defendant resides in this District.

## GENERAL ALLEGATIONS

**Brief Overview Of Concepts' Business**

6. Concepts is in the business of providing engineering services in connection with the design and development of industrial turbomachinery, such as compressors, pumps, blowers, fans, turbines, and expanders. In connection with this, Concepts has been building and overhauling Dynamometers for approximately twenty years.

7. Concepts has accumulated a wealth of experience and knowledge over the course of its years designing, building and overhauling Dynamometers. Through numerous design changes, process changes and other experiences, Concepts has developed information regarding the best methods for building and overhauling Dynamometers.

8. As a result of this experience and its dedication to high quality service, Concepts has developed a loyal client base.

9. One of Concepts' best clients is the United States Army. The Army, which has been a client of Concepts' Dynamometer services for almost twenty years, expends in excess of $150,000 per year for Concepts' services.

**Defendant's Employment With Concepts**

10. Concepts hired Defendant Kavanaugh on or about December 12, 2001.

DOWNS
RACHLIN
MARTIN PLLC

3

11. Kavanaugh was employed by Concepts as a production controller in Concepts' Woburn, Massachusetts facility. As production controller, Kavanaugh was responsible for opening up work orders, scheduling work on the shop floor, insuring that necessary materials were ordered in advance of the scheduled work, forecasting work orders, closing out work orders, and generally supporting others in building and overhauling Concepts Dynamometers as well as other products.

12. As a consequence of his role at Concepts, Kavanaugh was provided access to confidential and proprietary information, including pricing information, business and marketing information, development plans, and proprietary information regarding procedures and processes for Dynamometer overhauls. Kavanaugh also had access to Concepts' customer lists, contact information, and customer files.

13. At the outset of his employment at Concepts, Kavanaugh entered into a comprehensive Confidentiality and Nondisclosure Agreement with Concepts by which Kavanaugh agreed to hold Concepts' proprietary information confidential and to not divulge this information to individuals or entities outside of the company unless specifically authorized. A copy of this Agreement is attached hereto as Exhibit A.

14. Of particular relevance to this matter, the Agreement begins by providing:

As an employee engaged by Concepts ETI, Inc. (CETI or "the Company"), for salary and other benefits, to perform services for the Company, you may learn and make use of sensitive and commercially valuable business and technical information which is confidential in nature and in some cases constitutes trade secrets and practices of CETI or CETI's clients ("Confidential Technology and Information"). By your signature below you recognize CETI's legitimate interest in protecting Confidential Technology and Information and understand that this Agreement forms a part of the basis of CETI's willingness to employ you, or to contribute to employ you.

DOWNS
RACHLIN
MARTIN PLLC                                    4

15. The Agreement then defines "Confidential Technology and Information" broadly to include: "business, marketing, and advertising information and plans; customer, vendor, or consultant identifications; development plans; product information; information concerning the nature or direction of research and development activities; . . . All of these materials, and other materials which by their use or nature become known to you (or should be known to you) as confidential, shall constitute the Confidential Technology and Information, regardless of how you come to know of them."

16. The Confidentiality and Nondisclosure Agreement then sets forth the terms of the "General Agreement" between the parties. This "General Agreement" states:

> In consideration of your employment . . . by CETI, and the mutual covenants herein contained, CETI and you hereby agree as follows:
>
> . . .
> . . . Except as may be required by your employment at CETI, you will not, without CETI's written consent, disclose or use, nor solicit nor assist another to use or disclose, at any time either during or subsequent to your employment by CETI, any Confidential Technology and Information of CETI, or CETI's clients or business parties, of which you become informed during your employment.
>
> . . .
> . . . The undersigned employee understands that money damages may not adequately compensate CETI for any violation of this Agreement, or that money damages may not be readily calculable, and CETI therefore also reserves, in addition to all rights it has and may have in law or in equity, the right to enjoin, or seek damages or other remedies for, any actions violating this Agreement.

17. This Confidentiality and Nondisclosure Agreement was signed by Kavanaugh on November 27, 2001, and was countersigned, and therefore fully executed, by Concepts on December 7, 2001.

18. Kavanaugh worked for Concepts until May 27, 2004, at which time his position was eliminated for business reasons and his employment at Concepts was terminated.

DOWNS
RACHLIN
MARTIN PLLC                                5

**Defendant's Attempts To Sabotage Concepts' Business**

19. Several weeks after Kavanaugh's departure from Concepts, representatives from Concepts contacted the Army to discuss a proposed price increase for certain Dynamometer services that Concepts provides to the Army.

20. Specifically, on June 17, 2004, Concepts' Ed Killackey contacted Earl Gard with the U.S. Army to broach the subject of the proposed price increase. In a telephone call with Mr. Gard, Mr. Killackey explained the price increase and the rationale behind the increase. After listening to Mr. Killackey's explanation, Mr. Gard advised Mr. Killackey that the Army had received correspondence from an entity named DCA Engineering on May 15, 2004. As relayed by Mr. Gard, DCA Engineering is located in Uxbridge, Massachusetts, the same town where Defendant Kavanaugh resides.

21. Mr. Gard went on to discuss the contents of this correspondence, explaining that Defendant Anthony Kavanaugh, who was still working for Concepts as of May 15, 2004, was affiliated with DCA Engineering and that Mr. Kavanaugh had in fact held himself out to Mr. Gard as a representative of that entity. Mr. Gard stated that the May 15, 2004 correspondence specifically forewarned of Concepts' price increase (at that time still confidential information) and solicited the Army's Dynamometer overhauling business; business that was then being handled by Concepts.

22. The Army has yet to provide Concepts with a copy of the May 15, 2004, correspondence. Nevertheless, upon information and belief, the correspondence was written by Defendant Kavanaugh d/b/a DCA Engineering, located in Uxbridge, Massachusetts.

23. Regardless of whether Defendant Kavanaugh actually wrote the May 15, 2004, correspondence, the letter reveals that Defendant Kavanaugh divulged Concepts' confidential

DOWNS
RACHLIN
MARTIN PLLC                                6

and proprietary information without Concepts' authorization. Given the date of the correspondence, Defendant Kavanaugh divulged Concepts' confidential and proprietary information while Kavanaugh was still employed by Concepts.

24. Further, Defendant Kavanaugh held himself out to Concepts' client, the Army, as representing DCA Engineering. The correspondence from DCA Engineering was an open attempt to undercut Concepts' relationship with its client, and was an attempt to attract the Army's business away from Concepts. By virtue of holding himself out as a representative of DCA Engineering, Defendant Kavanaugh was directly competing with Concepts, without Concepts' knowledge, at a time when Kavanaugh was employed by Concepts.

25. Kavanaugh's attempt to undermine Concepts' relationship with the Army (and potentially other clients), and his use of Concepts' confidential and proprietary information to further his attempts to sabotage Concepts' business, has in fact injured Concepts' business and is in blatant breach of law.

26. Although the damages to Concepts flowing from Kavanaugh's actions cannot be ascertained with precision at this time, potential damages reach into the millions of dollars. As stated above, Concepts does approximately $150,000 per year of work for the Army. While Concepts and the Army had previously enjoyed a close relationship, and while the Army had viewed Concepts as a sole source supplier of Dynamometer overhauling services, the Army has now questioned that privileged position by virtue of Kavanaugh's improper actions and has indicated that it will entertain bids from other suppliers. The relationship between Concepts and the Army has therefore already been damaged. If Concepts loses the Army as a client, the value of the lost future profits will likely be in the millions.

27. Moreover, because of the surreptitious nature of Kavanaugh's improper activities, it is unknown what other of Concepts' clients have been approached by Kavanaugh using Concepts' own confidential and proprietary information. The Dynamometer market is relatively small and close knit. Because of this, Concepts' business reputation in that market is extremely valuable and important. Kavanaugh has already damaged Concepts' reputation with the Army. Depending upon the extent of Kavanaugh's use of Concepts' trade secrets, the potential damage to Concepts may be extremely substantial, well into the millions of dollars.

28. Concepts hereby seeks recovery for the damage caused by Kavanaugh's actions.

## COUNT I – BREACH OF CONTRACT

29. Plaintiff hereby repeats and realleges all previous paragraphs as if fully set forth herein.

30. Plaintiff and Defendant entered into a comprehensive Confidentiality and Nondisclosure Agreement effective December 7, 2001.

31. Pursuant to the express terms of that Agreement, Defendant was prohibited from disclosing Plaintiff's confidential and proprietary information, including pricing information.

32. Defendant breached the Agreement by divulging Concepts' pricing information to a third-party. Specifically, Defendant divulged the fact that Concepts intended to increase the amount it charged the Army for Dynamometer services. Defendant was not authorized to divulge this information and did so without Concepts' knowledge.

33. As a result of Defendant's breach of the Confidentiality and Nondisclosure Agreement, Plaintiff has been damaged.

DOWNS
RACHLIN
MARTIN PLLC

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

34. Plaintiff hereby repeats and realleges all previous paragraphs as if fully set forth herein.

35. Plaintiff has an ongoing business relationship with the U.S. Army that has lasted almost twenty years. Plaintiff contemplates additional contracts and business relationships with the Army in the future.

36. Defendant Kavanaugh was and is aware of Plaintiff's existing business relationship with the Army.

37. By divulging Plaintiff's confidential and proprietary information to the Army, including, but not limited to, Plaintiff's pricing information, Defendant Kavanaugh improperly interfered with Plaintiff's relationship with the Army.

38. Plaintiff's relationship with the Army has been undercut as a result of this improper interference, and Plaintiff has been harmed as a result of the improper interference.

39. Moreover, because the Army has indicated that it will entertain a bid made by Defendant Kavanaugh d/b/a DCA Engineering for the work currently being performed by Concepts, the harm to Concepts resulting from Defendant's improper interference may increase dramatically in the near future.

## COUNT III – BREACH OF DUTY OF LOYALTY

40. Plaintiff hereby repeats and realleges all previous paragraphs as if fully set forth herein.

41. Pursuant to his position at Concepts and by virtue of the Confidentiality and Nondisclosure Agreement he entered into with Concepts, Defendant Kavanaugh owed Concepts a duty of loyalty and was obligated to protect the interests of his employer.

42. By directly competing against Concepts while employed by Concepts, and by attempting to sabotage Concepts' business relationship with the Army, Defendant Kavanaugh breached the duty of loyalty he owed to Concepts.

43. Concepts has been damaged as a direct result of Defendant Kavanaugh's breach of his duty of loyalty.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS

44. Plaintiff hereby repeats and realleges all previous paragraphs as if fully set forth herein.

45. The information subject to the Confidentiality and Nondisclosure Agreement entered into between Concepts and Defendant Kavanaugh constitutes "trade secrets" protectable under Massachusetts law.

46. In particular, Concepts' pricing information, its business and marketing information, development plans, customer lists and contact information, and proprietary information regarding procedures and processes for Dynamometer overhauls all constitute "trade secrets."

47. Concepts takes reasonable steps to protect the confidentiality of the information it considers to be trade secrets. For example, Concepts employees with access to the information execute confidentiality and nondisclosure agreements, such as the Agreement entered into by Kavanaugh. Access to computerized information within the company is available by password only. Moreover, Concepts does not generally disseminate this confidential information outside of the company. Even within the company, information such as that improperly divulged and used by Kavanaugh is not generally disseminated, but is rather confined to those individuals who

have a need to know and use the information. This information is highly valuable to Concepts, and would be valuable to Concepts' competitors if it became known to them.

48.  Defendant Kavanaugh has misappropriated Concepts' trade secrets and confidential information by disclosing and/or using them as described herein in breach of the Confidentiality and Nondisclosure Agreement, and with knowledge that the information he has divulged is confidential and trade secrets.

49.  Defendant Kavanaugh has misappropriated and used Concepts' confidential information and trade secrets to advance his own business pursuits.

50.  Defendant Kavanaugh was not authorized to misappropriate and use Concepts' confidential information and trade secrets to advance his own business pursuits.

51.  Plaintiff Concepts has been damaged as a result of Defendant's misappropriation and use of Concepts' confidential information and trade secrets.

52.  Moreover, Concepts will be irreparably harmed and suffer other damage as a result of Defendant's misappropriation, further misappropriation, or threatened misappropriation of Concepts' trade secrets.

### COUNT V – MASS. GEN. L. CH. 93A, § 11

53.  Plaintiff hereby repeats and realleges all previous paragraphs as if fully set forth herein.

54.  Defendant Kavanaugh d/b/a DCA Engineering's actions of using Concepts' confidential and proprietary information and trade secrets to compete against Concepts while still employed by Concepts were taken willfully and knowingly, and constitute unfair and deceptive trade practices in violation of Mass. Gen. L. Ch. 93A, § 11.

55. As a result of Defendant's violation of Mass. Gen. L. Ch. 93A, § 11, Plaintiff has suffered an undetermined amount of money damages.

WHEREFORE, Plaintiff Concepts ETI, Inc. respectfully requests that this Court enter a JUDGMENT and DECREE granting the following relief:

A. ENTERING JUDGMENT in favor of Plaintiff and against Defendant on all Counts contained in Plaintiff's Complaint;

B. AWARDING DAMAGES to Plaintiff and against Defendant arising out of Defendant's breach of contract, tortious interference with business relationship, breach of duty of loyalty, misappropriation of trade secrets, and violation of Mass. Gen. L. Ch. 93A, §11, in an amount to be determined at trial;

C. AWARDING Plaintiff treble damages pursuant to Mass. Gen. L. Ch. 93A, §11;

D. AWARDING Plaintiff its reasonable attorneys fees and costs in pursuing this action pursuant to Mass. Gen. L. Ch. 93A, §11;

E. GRANTING Plaintiff a preliminary and permanent injunction prohibiting Defendant from using Plaintiff's confidential and proprietary information and trade secrets in the future without express authorization from Plaintiff; and

F. GRANT such other relief as is just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury on all issues so triable.

Dated at Burlington, Vermont this 25th day of June, 2004.

DOWNS RACHLIN MARTIN PLLC

*[signature]*
Walter E. Judge, Jr.
Mass. Bar No. 556650
Eric A. Poehlmann
Attorneys for Plaintiff Concepts ETI, Inc.
199 Main Street
P.O. Box 190
Burlington, VT  05402-0190
(802) 863-2375

## VERIFICATION OF COMPLAINT

I, **Harold Keiling**, hereby verify based on my knowledge and the knowledge of other employees and agents of Concepts with whom I have consulted that each and every factual statement appearing in the above Complaint is true.

*[signature: Harold Keiling]*
Duly Authorized Agent

## NOTARY ACKNOWLEDGMENT

STATE OF VERMONT
COUNTY OF WINDSOR, SS.

On this 24 day of June, 2004, personally appeared **Harold Keiling**, known to me, or satisfactorily proven to be the person who is the signatory to the foregoing, and made oath that the foregoing instrument, subscribed by him, is true.

Before me,

*[signature: Alice E. Bower]*
Notary Public

[SEAL]

My commission expires: 2-10-07

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) **Concepts ETI, Inc. d/b/a Concepts NREC v. Anthony F. Kavanaugh, Jr. d/b/a DCA Engineering**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - [ ] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
   - [X] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

   **04-11465 RGS**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   **None**

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [X]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME **Walter E. Judge, Jr.**
ADDRESS **Downs Rachlin Martin PLLC, 199 Main St., P. O. Box 190, Burlington, VT 05402-0190**
TELEPHONE NO. **(802) 863-2375**

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Concepts ETI, Inc. d/b/a Concepts NREC

## DEFENDANTS
Anthony F. Kavanaugh, Jr. d/b/a DCA Engineering

FILED IN CLERK'S OFFICE
2004 JUN 28 A 11:44
U.S. DISTRICT COURT
DISTRICT OF MASS.

(b) County of Residence of First Listed Plaintiff: Windsor Co., VT
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number) 802-863-2375
Walter E. Judge, Jr.
Downs Rachlin Martin PLLC
199 Main Street, P. O. Box 190
Burlington, VT 05402-0190

Attorneys (If Known)
04-11465 RGS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury—Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Common law causes of action for breach of contract, tortious interference, breach of duty of loyalty, and misappropriation of trade secrets. State statutory claim under Mass Gen. L. Ch. 93A, ¶11.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ In excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____
None

DATE: June 25, 2004
SIGNATURE OF ATTORNEY OF RECORD: Walter E. Judge, Jr.

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____